Ora **FLESHER**, as Executrix under Will of Fred Flesher, deceased, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. 710–F.

United States District Court N. D. West Virginia, at Fairmont. Jan. 19, 1965.

Josephine H. Berry, Clarksburg, W. Va. (Stathers & Cantrall, Clarksburg, W. Va., on brief), for plaintiff.

John H. Kamlowsky, U. S. Atty., Fairmont, W. Va. (Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, George A. Hrdlicka, Dept. of Justice, Washington, D. C., on brief), for defendant.

CHRISTIE, District Judge.

This is an estate tax case, and it involves the question as to whether the interest in a trust estate taken by plaintiff under her husband's will qualified for the marital deduction under Section 812(e) (1) (F) of the Internal Revenue Code of 1939, as amended by the Technical Amendments Act of 1958, Section 93, 26 U.S.C.A. § 2056(b) (5), as plaintiff contends, or whether it constituted a nondeductible terminable interest under Section 812(e) (1) (B) of the 1939 Code, 26 U.S.C.A. § 2056(b) (1). The case was submitted on agreed facts which are briefly summarized below.

Fred Flesher died testate on October 14, 1953. His will, dated July 7, 1945, was admitted to probate on October 27, 1953. In the will, plaintiff was named executrix of the decedent's estate, and she so qualified. Plaintiff was also named trustee under the provisions of the will. She has since acted in that capacity.

On October 25, 1954, plaintiff filed a United States Estate Tax Return and paid the tax shown thereon in the amount of $19,335.80. In the return the decedent's residuary estate was valued at $137,668.55. This amount was claimed as part of the marital deduction. The Commissioner of Internal Revenue, upon audit of the estate tax return, determined that decedent's residuary estate did not qualify for the marital deduction. The estate tax was accordingly recomputed excluding the residuary estate as part of the marital deduction. The result was a decrease in the amount of the net marital deduction claimed by plaintiff as executrix of $121,877.17. This amount was disallowed by the Commissioner as a part of the estate tax marital deduction. After further minor adjustments, which are not here disputed, the total gross estate was determined by the Commissioner to be $338,959.49. These adjustments resulted in the assessment of an estate tax deficiency of $37,048.77 and interest of $1,992.48, or a total of $39,041.25, which was paid by the executrix on February 13, 1956 ($37,048.77),

and on February 27, 1956 ($1,992.48). Plaintiff filed a timely claim for refund in the amount of $32,674.78 on May 11, 1959, which claim was rejected by the District Director of Internal Revenue on April 13, 1960. Plaintiff's claim for refund is based solely on the Commissioner's disallowance of $121,877.17 of the claimed marital deduction. The tax assessed on the amount disallowed was $32,674.78.

In order to understand more fully the problems presented, the pertinent portions of the decedent's will is set out below:

"ITEM TWO: All of the rest and residue of my said personal estate remaining after the payment of debts, funeral expenses and costs and expenses of administration, taxes and other lawful charges as provided in ITEM ONE hereof and all my real estate, I give, devise and bequeath unto my present wife, Ora Flesher, of Jane Lew, West Virginia, as and in the capacity of Trustee, for and during the life of my son, Fred R. Flesher, IN TRUST, for the use, benefit and behoof of my said son; and I hereby authorize and empower the said Ora Flesher, as Trustee, as aforesaid, to assume charge of, and to hold, manage, administer, operate, and to make necessary repairs, replacements and additions to, and to take, have and receive all of the rents, issues, profits and other income from all that part of my estate coming into her hands hereunder, and also to use, consume and expend such portions thereof as she, in her discretion, may deem necessary or proper to adequately support and maintain my said son in a manner comporting with his station in life, so long as he shall live; and if the income from the trust estate hereby created shall at any time be or become inadequate for the purposes aforesaid of the trust hereby created, or in case said Trustee shall find it unprofitable, detrimental or disadvantageous or in any respect to the best interest of the trust not to continue to hold, manage or operate any part or parts of the trust estate, I give full power and discretion to said Trustee from time to time to sell any part or parts of the trust estate, whether the same be real or personal property, or both, at public or private sale, at such prices and upon such terms and conditions as she shall deem proper and to execute, acknowledge and deliver all proper writings, deeds of conveyance and transfers therefor, and to invade and use all or so much or such parts of the proceeds of any sale or sales made by said Trustee as she may consider adequate to provide my said son with support and maintenance consonant with my desires therefor hereinabove expressed, and I also authorize and empower said Trustee to invest and from time to time reinvest the proceeds from property sold by her in other property, real or personal, or both, and from time to time to re-sell and convey or otherwise dispose and make proper transfers of the property so purchased, and to change, convert and substitute investments, and in every instance the said Trustee alone, and not the purchaser, shall be required to see to the proper application of all purchase money derived from all sales made by her under authority hereof;

"PROVIDED, HOWEVER, that as to any and all property belonging to my estate which shall remain at the death of my said son, my said wife, if then living, shall take and is hereby devised and bequeathed a life estate therein;

"PROVIDED, further, that from and after my death, my said wife shall have and is hereby given the unrestricted right, power and authority to take and consume so much of the income of my estate as may be necessary for her proper support and maintenance in a manner comporting with her station in life, so long

as she shall live, and if the net income therefrom shall at any time be inadequate to maintain and support her and my said son or her alone, in case she shall outlive him, in the manner above specified, I authorize her to invade, take, use and consume so much of the principal of my estate as may be required for their combined support and maintenance, as aforesaid, and for her sole support and maintenance, in case he shall predecease her, and if sufficient money or other liquid assets shall at any time not be available for that purpose, I authorize, empower and direct my said wife to sell, convey and convert into money so much and such portions of my estate, real or personal, as in her judgment and discretion may be requisite to provide plentifully for the proper support and maintenance of my said wife and child, and the survivor of them.

"Having confidence in the personal integrity of my said wife designated by me as Trustee hereunder and deeming it unnecessary that bond be required of her, I direct that she be permitted to qualify and act as such Trustee and as Executrix of this will under the appointment to that office hereinafter made, without bond or other security being required of her.

"ITEM THREE: I give, devise and bequeath all that may remain of my estate, real, personal and mixed, at the death of the survivor of my said wife, Ora Flesher, and my said son, Fred R. Flesher, unto my two brothers, Edward J. Flesher and Thomas J. Flesher, and unto my two sisters, Mary K. Ward and Emma E. Neely, in fee simple, jointly and equally."

Upon the above-quoted portions of the will of Fred Flesher, deceased, and the agreed facts, the issues as to what interest or estate the plaintiff, Ora Flesher, took under West Virginia law will be decided. After that crucial issue is re-solved, the Federal Estate Tax law concerning marital deductions will be applied by this Court.

Prior to the enactment of Chapter 36, Article 1, Section 3536 of the West Virginia Code, the West Virginia case law was clear that a life tenant who has unlimited powers of appointment, disposal, or user for support and maintenance was devised, as a matter of law, a fee simple. Any remainder over to others was void. Grimmett v. Meadows, 116 W.Va. 384, 180 S.E. 534; Swan v. Pople, 118 W.Va. 538, 190 S.E. 902; Price v. Talkington, 126 W.Va. 263, 27 S.E.2d 705. However, after the enactment of Chapter 36, Article 1, Section 3536 of the West Virginia Code in 1931 the remainder over did not fail. Therefore, now a life tenant with unlimited powers of user or disposal takes something less than a fee simple absolute upon the death of a testator. Under the common law principles of estates in property, there could under no circumstances be a valid limitation over after a fee simple absolute. Even the above-cited statute does not change this ancient principle of law. The West Virginia Supreme Court of Appeals has held that, under circumstances where a life tenant is given unlimited powers as discussed above, there was created "a life estate in the first taker with an appendant power which, if exercised, is thereby enlarged into a fee which thus destroys the vested remainder of the limitation over." Price v. Talkington, supra, at page 708 of 27 S.E.2d. Consequently, the plaintiff in this case, even assuming for the purposes of argument only that she was given unlimited powers of disposal or user, did not receive a fee simple absolute. At most, employing the same argumentative assumptions, she received a life estate that could be elevated to a fee simple at some future time by an act on her part. Therefore, the trust property does not qualify for a marital deduction under the general provisions of Section 812 of the Internal Revenue Code of 1939.

It is clear, though, that plaintiff did receive a life interest in the trust

property. However, this being a "terminable interest" it would not qualify for the marital deduction. Internal Revenue Code of 1939, Section 812(e) (1) (B). But plaintiff would bring herself within the exception to this terminable interest rule contained in Section 812(e) (1) (F) of the Internal Revenue Code of 1939, as amended by Section 93(a) of the Technical Amendments Act of 1958. This amended exception briefly states that in the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to *all* the income from the *entire* interest, or *all* the income from a *specific portion* thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the *entire* interest, or such *specific portion* (exercisable in favor of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse, *then the surviving spouse is entitled* to an allowance of marital deduction. Therefore, there are five conditions that must be met before the trust can qualify for the marital deduction under the 1958 Act, to-wit:

(1) The surviving spouse must be entitled for life to *all* the income from the *entire interest,* or *all* the income from a *specific portion* thereof;

(2) The income must be payable annually or at more frequent intervals;

(3) The surviving spouse must have a power of appointment over the corpus of the *entire interest* or a *specific portion;*

(4) There must be no power in any other person to appoint any part of the interest to any other person than the surviving spouse; and

(5) The power must be exercisable by the *spouse alone and in all events.*

Thus, the issue to be resolved is whether, under the terms of the will, these foregoing conditions have been met.

Reading the entire will carefully, it is manifested that the decedent's dominant intent was to provide for his son's maintenance and support in a manner consistent with his station in life. His wife, plaintiff and trustee, was also to be provided for in a similar manner. But the provisions for her are mentioned only secondarily in succeeding paragraphs. The trustee-plaintiff was given broad powers to invade the corpus of the trust if such became necessary for the son's maintenance and support and also for her own. This power to invade for the stated purposes is not an unbridled power. It must be used reasonably. Smith v. Smith, 134 W.Va. 842, 62 S.E. 2d 347. Also clearly the intent of the decedent was not to give his wife, as trustee, the power to appoint to herself and thereby destroy the son's right to maintenance and support from the trust income and corpus if its use became necessary. It is beyond question that plaintiff did not have the power to dispose of or appoint the corpus of the trust by will because the decedent's will provided for a valid remainder over to named persons or to their heirs upon the death of the survivor of the wife or son.

Quite clearly the greatest limitation on plaintiff's power to dispose or appoint is the beneficial interest of the son in the trust income and corpus. His support and maintenance appear to be the primary reason for setting up the testamentary trust in the first instance. To hold that the plaintiff was given the power to arbitrarily dispose of the trust corpus to the son's obvious detriment would be contrary to the clear intent of the decedent. This intent is controlling unless it is contrary to some positive rule of law. Weiss v. Soto, 142 W.Va. 783, 98 S.E.2d 727. Therefore, it is manifest that plaintiff did not and does not have an unlimited power to use, appoint, or dispose of the corpus of the entire trust, which is so necessary in satisfying the third condition of the statute.

■ Plaintiff argues that if she did not have an unrestricted power of appointment over the entire trust, she at least had such power as to a specific portion of the trust, using actuarial tables to determine the portion. It is then asserted that that specific portion qualified for the marital deduction under the theory advanced in the case of Gelb v. Commissioner of Internal Revenue, 2d Cir., 298 F.2d 544. With this contention, this Court does not agree. In the Gelb case the trustees were empowered to invade the corpus to the extent of $5,000.00 per year for the support, education, and maintenance of the decedent's minor daughter. The Court held that a "specific portion" of the trust estate subject to the power of appointment could be determined by applying the fixed figure of $5,000.00 per year in conjunction with actuarial tables. The resultant amount would qualify for the marital deduction. Here there is an entirely different situation. The power to invade for the son's benefit is not limited to a maximum figure. The amount required for the son's support and maintenance is dependent on many factors not the least of which are his needs, and these must necessarily be measured by his state of health. The figure must, of course, be a variable. This Court is unaware of any method to make the son's requirements or needs certain, and none has been suggested. Therefore, there is no invariable figure available as to amount upon which to base any mathematical calculations. The theory, naturally, was to multiply the amount needed by the number of years remaining in the son's probable life span. This amount could then be deducted from the corpus of the trust which would leave remaining the amount or "specific portion" of the trust over which plaintiff would have a power of appointment. This necessarily assumes that plaintiff would have an unlimited power of appointment over the "specific portion" of the trust. It is unnecessary for the Court to decide the validity of this assumption in view of the finding that there is no way of determining a "specific portion." Treasury Regulation 105 of the 1939 Code states:

" * * * Further a power is not exercisable in all events, if it may be exercised for a limited purpose only. * * * Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events."

Clearly, under the terms of the will in this case, the spouse's power of invasion of the trust was for a limited purpose only—maintenance of herself and the son—with remainder after her and her son's deaths to testator's brothers and sisters absolutely, and it, therefore, fails to meet the fifth condition of the statutory regulation.

From the above discussion, it is apparent that plaintiff did not have the unbridled right to all of the income from the trust, or all the income from a specific portion thereof. There can be no doubt that she is entitled to an indefinite portion, but then so is the son. Thus, the first requirement or condition of the statute that she be entitled for life to "all the income from the entire interest or the income from a specific portion thereof" is not met. Also the discussion earlier in this opinion concerning plaintiff's power of appointment over the entire corpus of the trust or a "specific portion" thereof establishes that the trust or any part of it does not comply with the third requirement or condition of the statute. Therefore, it is the conclusion of this Court that the trust or any part thereof does not qualify for the marital deduction. Consequently, the ruling of the Commissioner of Internal Revenue is upheld, and plaintiff's claim for a refund of the estate tax assessed against the testamentary trust is denied.