Ganey, Circuit Judge, Staley, Chief Judge, and McLaughlin, Circuit Judge, dissented.

**NORTHEASTERN PENNSYLVANIA NATIONAL BANK & TRUST COMPANY, Executor Under the Will of Clarence C. Young**

v.

**UNITED STATES of America, Appellant.**

**No. 15249.**

United States Court of Appeals Third Circuit.

Argued Oct. 18, 1965.

Reargued June 9, 1966.

Decided July 18, 1966.

Morton K. Rothschild, Dept. of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellant, Bernard J. Brown, U. S. Atty., of counsel.

Donald J. Fendrick, Scranton, Pa. (Alex Marcus, Scranton, Pa., on the brief), for appellee.

Before STALEY, Chief Judge, and McLAUGHLIN, KALODNER, HASTIE, FORMAN, GANEY, SMITH and FREEDMAN, Circuit Judges.

FORMAN, Circuit Judge.

This is an appeal by the defendant, United States of America (hereinafter appellant) from a summary judgment entered by the United States District Court for the Middle District of Pennsylvania on the motion of plaintiff,

Northeastern Pennsylvania Bank and Trust Company, Executor under the will of Clarence C. Young (hereinafter appellee), in the amount of $17,574.45 with interest, and from the denial of appellant's motion for summary judgment. Appellee's suit alleged an improper rejection of a claimed marital deduction.

Decedent died testate on May 3, 1958 survived by his wife and four children. Paragraph 6 of decedent's will [1] provided for the bequest of one-half of the residue of the estate to appellee who was directed to pay out of income, and corpus if necessary, the sum of $300 per month to decedent's wife until his youngest child reached eighteen years of age, after which appellee was directed to pay decedent's wife $350 per month for the rest of her life. Paragraph 6 also provided that if decedent's wife survived

him, she would have the power, exercisable by will, to appoint to her estate, or to others, any or all of the principal of the trust remaining at the time of her death. Paragraph 11 [2] recited that such stipends were in no event to be liable for any debts contracted by the survivor and were not to be liable to attachment or assignment, but were solely for the use, maintenance and support of the survivor.[3] Paragraph 11 also indicated that income produced from the corpus of the trust which exceeds the monthly allotment is to be accumulated. Paragraph 12 [4] of the will granted appellee the power to authorize payments over and above the monthly stipend up to $1500 in the event of a serious illness or financial emergency affecting the surviving spouse. Whether the figure of $1500 is in the aggregate or may be paid in each event is unclear.

1. "ITEM 6. I give, devise and bequeath one-half (½) of all the rest, residue and remainder of my estate, whatsoever and wheresoever the same may be, both real and personal, to which I may be entitled, or which I may have power to dispose of at the time of my death, unto my Trustee hereinafter named and designated, to have and to hold the same in trust, nevertheless, as hereinafter provided.

"(a) I direct my Trustee to pay out of the said income and corpus of the said estate unto my wife, Beatrice O. Young, the sum of Three Hundred Dollars ($300.00) per month for and during the period until my youngest child reaches the age of eighteen years, and thereafter I direct my Trustee to pay to my wife, Beatrice O. Young, the sum of Three Hundred Fifty Dollars ($350.-00) per month for and during the rest of her natural life.

"(b) If my wife survives me, she shall have the power, exercisable by Will, to appoint to her estate, or to others, any or all of the principal remaining at the time of her death. If my wife fails to appoint the entire principal to her estate or to others as above authorized, then upon her death (or if she predeceases me, then upon my death) any principal remaining at that time shall be paid over to my children on the same terms and conditions as under Item 7 of this my Will."

2. "ITEM 11. The income and payments herein provided for my wife and children

and the issue of my children are for their, and each of their, sole and separate use, maintenance and support, and are in no event to be liable for any debts contracted by them or any of them, and are not to be liable to attachment or assignment, but are solely and exclusively for their and each of their sole and individual use, maintenance and support, and none of the income and payments shall vest in the said cestuis que trustent, or either of them, until payments shall have been made to her or to him, as the case may be."

3. Whether such limitations are valid has no bearing here as we are only interested in them as they reflect the decedent's intent.

4. "ITEM 12. In the event of a serious illness or a financial emergency affecting my wife or any of my children, I herewith direct and authorize my Trustee to pay, in addition to other payments hereinbefore provided for, to my wife, or to my children, as the case may be, an amount not exceeding Fifteen Hundred Dollars ($1500.00), the said amount to be determined by my Trustee, as in its discretion the same may be necessary, during such illness or financial difficulty. The said payments to any child or children to be considered as an advancement and to be deducted from the respective share of said child or children."

Decedent's adjusted gross estate was $199,749.96. Appellee sought to qualify the maximum amount, one-half of that adjusted gross estate, $99,874.98, as a marital deduction in accordance with Sections 2056(c) (1) [5] and 2056(b) (5) [6] of the 1954 Internal Revenue Code. The value of the property passing outside the will, to the decedent's spouse, $41,751.02, was combined on the estate tax return with the full value of the testamentary residuary trust, $69,245.85, to total $110,996.87. That portion of $110,996.87 which constituted one-half of the adjusted gross estate, $99,874.98, was listed, as noted above, as qualifying for the marital deduction. Appellant eliminated the full value of the testamentary residuary trust from the claimed marital deduction and thus decreased the amount of the allowable marital deduction to $41,751.02. The deficiency in estate tax was paid, a claim for refund was disallowed, appellee filed suit for refund, and after motions for summary judgment were presented by both parties, the District Court ruled in favor of the appellee and granted the refund.[7]

The District Court did not, as proposed by appellee, conclude that the entire value of the trust corpus, $69,245.85, could be considered for the marital deduction. Instead, it applied a Treasury Department actuarial formula to value the present worth of the surviving spouse's monthly stipend. This formula produced a value of $63,663.43. This was added to $41,751.02, the value of the property passed to the surviving spouse outside the will, to total $105,414.45, an amount in excess of one-half of the decedent's adjusted gross estate, $99,874.98, the maximum allowable statutory marital deduction. The District Court thus concluded that appellee was entitled to the full marital deduction of $99,874.98, and judgment was entered for $17,574.45 plus interest, representing the tax found to have been unlawfully collected by appellant.

I

As the marital deduction provisions function today, under a trust arrangement such as the one involved herein, the entire corpus of the trust qualifies for inclusion in the estate tax return as part of the marital deduction if each of two prerequisites [8] are met: (1) the surviving spouse is entitled to all the income produced from the corpus for the remainder of the survivor's life with (2) power in the survivor to appoint the entire corpus remaining at the time of the power's exercise. If the survivor's requisite relationship to the corpus bars the qualification of the entire corpus for the deduction, a part of the trust corpus will qualify for marital deduction status if the survivor is entitled to the income from a "specific portion" of the whole, whether there be a power to appoint the entire interest remaining at the time of the power's exercise or the power to appoint only a part thereof.[9] Appellant's administrative regulation [10] has defined "specific portion" as a fractional or percentile part of the entire corpus. The practical effect of the marital deduction is to defer taxation of some part of the decedent's estate passing to the surviving

---

5. 26 U.S.C. § 2056(c) (1) (1965).

6. 26 U.S.C. § 2056(b) (5) (1965).

7. Northeastern Pennsylvania Nat. B. & T. Co. v. United States, 235 F.Supp. 941 (M.D.Pa.1964).

8. There are other contingencies not relevant to the problem at hand.

9. Consistent with this, only a part of the corpus will qualify for marital deduction status if the survivor is entitled to all the income from the corpus for life but may only appoint a "specific portion" of

the remainder of the corpus at the time of the power's exercise. Similarly, only a part of the corpus, the smaller of the two specific portions, will qualify for marital deduction status if only a "specific portion" of the income may go to the survivor for life and if the survivor's power of appointment is limited to a "specific portion" of the remaining corpus at the time of the power's exercise. See 26 C.F.R. § 20.2056(b)–5(b) (1961).

10. 26 C.F.R. § 20.2056(b)–5(b) (1961).

spouse until the death of the surviving spouse.

Reviewing the purpose of the marital deduction, Mr. Justice Goldberg speaking for a unanimous court in United States v. Stapf [11] explained:

"The 1948 tax amendments were intended to equalize the effect of the estate taxes in community property and common-law jurisdictions. [Footnote omitted.] Under a community property system, such as that in Texas, the spouse receives outright ownership of one-half of the community property and only the other one-half is included in the decedent's estate. To equalize the incidence of progressively scaled estate taxes and to adhere to the patterns of state law, the marital deduction permits a deceased spouse, subject to certain requirements, to transfer free of taxes one-half of the non-community property to the surviving spouse. Although applicable to separately held property in a community property state, the primary thrust of this is to extend to taxpayers in common-law States the advantages of 'estate splitting' otherwise available only in community property States."

Problems that have arisen in this area have in the main concerned the extent to which the advantages of estate-splitting are to be allowed. Towards clarification of this issue, the above noted interpretive regulation was promulgated. A detailed discussion of the congressional intent behind the passage of the 1948 Revenue Act appears in Senate Report No. 1013, March 16, 1948 [to accompany H.R. 4790]. In that Report, the marital deduction additions to the 1949 Code are characterized as follows:

"These provisions have the effect of allowing a marital deduction with respect to the value of property transferred in trust or at the direction of the decedent *where the surviving spouse,* by reason of her right to the income and a power of appointment, *is the virtual owner of the property.*" [12]

And, as above detailed, the virtual ownership interest encompasses that existent in a "specific portion" of the trust corpus.

In sum, the propriety of granting a marital deduction in this case must be measured by the purpose of the marital deduction as expressed in *Stapf,* the interpretive regulation as promulgated by the Internal Revenue Service, the expression of the congressional intent on the subject, and the decedent's intent in structuring the existent trust arrangement.

## II

As the survivor has been given in Paragraph 6 the right to appoint the entire corpus, no question arises in this case concerning the "specific portion" of the corpus to which the power extends. The contentions concern solely the relationship between the survivor's monthly stipend and the trust corpus—whether the decedent's trust arrangement placed in his surviving spouse the right to all the income from the corpus, or all the income from a "specific portion" thereof? The appellee has offered alternative arguments, as it did before the District Court, to justify either the inclusion of the entire $69,245.85 residuary trust in the estate tax return as appropriate for marital deduction status or the inclusion of $63,663.43 in the return as a "specific portion" of the residuary trust thus qualifying for marital deduction status.

 The District Court rejected, properly we believe, appellee's contention that the entirety of the trust corpus of $69,245.85 be entitled to marital deduction status. It was pointed out that appellee's position fails for, in deciding whether the survivor is entitled to receive all the income from the trust

---

11. 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (text and n. 12) (1963).

12. 2 U.S.Code Cong. and Ad.News, 80th Cong., 2nd Session, p. 1238 (1948) (Emphasis added.)

corpus for life, the determinative factor is what income the trust corpus *could* produce and not what is *now* being produced, or what ultimately *will* be produced. Here, the corpus may be able to produce more than the survivor's monthly stipend. The surplus would have to be accumulated and the survivor would have no right to the *present enjoyment* of the excess income, even though, as argued by appellee, she would have the power to appoint it. Thus, the survivor would not be entitled to the entire income which might come from the corpus, within the intendment of Section 2056(b) (5) of the 1954 Internal Revenue Act.[13] This very real consideration must also be given appropriate weight in determining whether the survivor is entitled to the income from a "specific portion" of the trust, and what such "specific portion" is.

■ Was appellee, as found by the District Court, entitled to the inclusion in its tax return of $63,663.43 from the corpus as a "specific portion" thereof —a part in which the surviving spouse had a total income interest? The method of actuarial computation used by the District Court, along with the efficacy of the use of any actuarial method of computing "specific portion", is of primary concern and requires analysis. It is well to underline the statutory language which must be considered in this respect. Section 2056(b) (5) of the Code makes it clear that "specific portion" is that part of the trust corpus from which the surviving spouse is entitled to "all the income." Thus, unless the actuarial formula used by the District Court succeeds in isolating that part of the trust corpus from which the survivor is entitled to *all* the income for her lifetime, the computation is of no value. The actuarial method on which

this case has been turned does not, in our view, isolate that part of the trust corpus from which the surviving spouse is entitled to all the income.

The District Court, in computing the present worth of the survivor's monthly stipend, applied a formula used by the Treasury Department in the "valuation of annuities, life estates, terms for years, remainders and reversions." This may be found in 26 C.F.R. § 20.-2031–7 (1961). The formula valued the worth of the monthly stipends by multiplying together the following factors: $300 (amount of monthly payment); 12 (number of months in a year); 1.0159 (factor for monthly payments); and 17.3911 (factor for the discount rate of 3½ percent over the period of the widow's life expectancy). The present worth of the $300 monthly stipend was determined to be $63,663.43, a "specific portion" of the trust corpus, and thus qualifying for marital deduction status. The District Court thus rejected the Treasury Regulation noted above so far as it required the "specific portion" to be specified in fractional or percentile form.

■ As an initial matter, we find the formula inappropriate in determining what part of a trust corpus may be considered a "specific portion" for marital deduction purposes. First, the mere fact that the formula is one for valuing an annuity eliminates it as appropriate for determining "specific portion." The factor 17.3911 in the formula represents the present worth of one dollar invested in an annuity at 3½ percent over the remaining life expectancy of a person forty-two years of age, the age of the surviving spouse at the decedent's death. The formula thus provides a discount value through a process of capitalizing at 3½ percent what are directed

13. It should be noted in passing that it would be unrealistic to conceive of an unlimited income potential from a trust whose trustees, by law, must stay within the bounds of certain guide lines. Such a consideration may play a part in another case at another time. Here, however, appellee does not argue, nor does the record reflect, that the appellee, by law, cannot invest the corpus to produce an income in excess of the monthly stipend. Thus the potentiality of the production of an income in excess of the monthly stipend to the survivor is a real factor which has been, and must be, given its due weight by the courts.

to be $300 monthly payments. If $63,663.43 is invested at age forty-two, that amount will provide the annuitant the required monthly payments for her entire life. At death the entire fund will have been dissipated. However, the factor of fund dissolution has in no way been contemplated by the decedent. The formula thus intrudes an artificial element into our problem, an element inconsistent with what the District Court in effect conceded to be the income production potential of the corpus when it ruled that appellee was not entitled to a marital deduction for the full value of the trust corpus.

Second, the monthly stipend alloted under the trust arrangement, $300 initially, is placed into the formula as the amount of *income* which a given fund must produce. However, under the trust arrangement, the trustees have not been directed to invest the corpus so that it will yield a given monthly income. All that has been directed is that the survivor receive such income, *even if corpus must be invaded* to make up the difference between the income yield of the corpus per month and the stipend allotment. And if the income yield be greater than $300 in a given month, the excess is to be accumulated. Thus, inclusion of the $300 figure in the formula is inappropriate for it equates the monthly stipend with the income yield from the corpus, elements which are in no way interchangeable.

Third, and this has a direct bearing on the point just made, the formula may be characterized as one which attempts to capitalize a given monthly stipend and produce a capital value, $63,663.43, which is to be the "specific portion" for marital deduction purposes. Such a method of computation is improper for we already know what is the value of the entire trust. Only from that given value of $69,245.85 may any computation of "specific portion", if any be appropriate, proceed. Under the formula used by the District Court, the results that may be reached demonstrate the inappropriateness of a capitalization method which disregards the present value of the trust corpus. Assume for a moment a direction that appellee pay $350 monthly as a stipend to the surviving spouse as of the date of decedent's death. Capitalizing a $350 monthly stipend under the District Court's formula for determining "specific portion", the capital value figure reached is $74,199.80, a sum in excess of the value of the entire trust corpus. As stated above it is conceded that the estate is not entitled to a marital deduction for the sum of the entire trust corpus, because of the potentialities of income production. Yet, under the actuarial formula used to determine "specific portion", the formula accepted by the District Court, at least the entire value of the corpus is to qualify for the deduction as a "specific portion" of the entirety, and theoretically a sum in excess of the entire trust corpus's value will qualify. The incongruity of equating the monthly stipend with the income yield is manifest.

Finally, in determining the "specific portion" of a given trust corpus from which part the survivor has an absolute income right, actuarial computation is inappropriate when the formula uses variable factors other than mere life expectancy. The use of the monthly stipend as the income factor in the formula noted above exemplifies the attempt to make constant that which is variable in this case. The 3½ percent investment factor in the actuarial formula is likewise unreal. As previously indicated, Congress's intent was to give a marital deduction to those interests of a surviving spouse in a common law jurisdiction which were akin to the fee simple interest held by a survivor in a community property state. Such an interest, to qualify as akin to a fee simple interest, must be subject to the rise and fall of the market. An investment constant, such as 3½ percent in the instant case, though accepted in actuarial formulas, has no place in a problem where the very real income variations turn the issue of the allowance of the marital deduction. Indeed, the use of such a constant is

absent from the regulations dealing with the "specific portion" issue, whereas it may be found in the regulations in formulas geared to different problems.

Having attempted to demonstrate the inappropriateness of the formula used by the District Court, the question arises as to whether, under the facts of this case, there does exist a method for isolating a "specific portion" of the trust corpus to qualify for marital deduction status? The term "specific portion" has been appropriately defined in this manner:

> "Presumably, specific portion does not mean anything more than a designation of the amount of the surviving spouse's interest *which makes it feasible to compute the amount of the marital deduction.*" [14]

Feasible computation of a "specific portion" is the key to marital deduction status.

The Internal Revenue Service in its above noted regulation considers any testamentary trust which describes the relationship between the income to be received by the survivor and the trust corpus in anything but "fractional or percentile" terms as one which expresses a relationship falling outside the susceptibility of computation, and thus one which thwarts a determination of "specific portion" for purposes of the marital deduction. Gelb v. C. I. R.,[15] heavily relied upon by appellee and the District Court, expressed a view which is contrary to the interpretive regulation. In *Gelb* the surviving spouse was entitled to *all* the income from the trust corpus for her life. As distinguished from the case at hand, the issue in *Gelb* was whether the survivor had a power of appointment over a "specific portion" of the trust corpus. That problem arose because the trustees in *Gelb* were empowered to invade the corpus, in their discretion, to the extent of $5,000 per year

for the support, education and maintenance of the decedent's minor daughter. The Government argued that the relationship between the extent of the invasion of corpus for purposes of supporting, educating, and maintaining the decedent's minor child, and the entirety of the corpus, was not expressed in "fractional or percentile" form and thus there was no "specific portion" for marital deduction purposes. The Second Circuit reviewed the use of actuarial formulas at some length and then finding for the taxpayer, remanded the case to the Tax Court to determine how much of the trust corpus qualified for the marital deduction under the actuarial principles which had been discussed. Though there was no mention of what particular formula should be applied, in either the Second Circuit's opinion or the stipulation of dismissal by the parties on the remand indicating the lump sum of the taxpayer's overpayment,[16] *Gelb* can easily be read to be consistent with the result for which the appellant contends in the instant case. Under the facts of *Gelb* only the life expectancies were subject to variation. By applying the $5,000 figure, the *maximum* extent to which the trustees could invade the trust corpus annually, together with the combined average figure of the surviving spouse's and minor child's life expectancies, the lump sum amount to be carved out of the trust corpus could be acceptably *maximized* by the computation. The remainder would be that part of the trust corpus, the "specific portion", to which the estate would be entitled to a marital deduction, a part of the corpus which in no reasonable event could be invaded for interests other than those of the surviving spouse.

The *Gelb* principles and disapproval of the Government's regulation are appropriate to the facts of *that* case. But there is no need to take a position concerning the validity of that interpretive

---

14. Lowndes and Kramer, Federal Estate and Gift Taxes 407 (1956). (Emphasis added.)

15. 298 F.2d 544, 551 (2 Cir. 1962).

16. See U.S. Tax Ct. Docket No. 71095, stipulation entered July 26, 1962.

regulation, as it applies to this case. Suffice it to say, even assuming its invalidity, we have been unable to conceive of a method to compute the "specific portion" of the trust corpus to which the surviving spouse is entitled to all the income for her life. There are too many variables here. The market conditions for purposes of investment are unknown. If they are poor, a greater invasion of corpus to meet the monthly stipend will be necessary, causing a concomitant diminution of income. If market conditions are good corpus may not have to be invaded, and income accumulations may indeed accrue. Furthermore, the extent to which the appellee may, under Paragraph 12 of the will, choose to invade corpus for illness and financial emergencies is an unknown factor of considerable moment in any computation of "specific portion". Thus, in this case, the factual constants do not exist upon which the maximum income can be theoretically computed, as it was possible to theoretically compute the maximum invasion of corpus in *Gelb*. In short, the ratio between the maximum monthly income and the monthly stipend —the fraction of the entire corpus which would be the "specific portion" for marital deduction purposes—may not be acceptably computed.[17]

In essence then, neither the District Court's formula, nor any other method of calculation of which we can conceive, when applied to the facts of this case, provides a method to handle the problem of maximizing the investment potential of the trust corpus. Because the marital deduction is to be allowed only when the trust beneficiary has been given an interest akin to a fee simple, what *might* ultimately happen to the invested corpus is the central consideration in determining marital deduction qualification, and the ability to maximize future investment potential is crucial to qualification, absent a fractional or percentile expression of the right to income from the trust corpus. Thus, even if done with precision, the time of the decedent's death is the inappropriate time at which to freeze the income production status of the invested corpus for purposes of qualifying a "specific portion" for the marital deduction.

We have reached the above conclusion with an awareness that a three-judge panel of the Seventh Circuit has most recently expressed contrary views, one judge dissenting.[18] We think the observation of the dissenter, however, in characterizing the impact of the formula used in that case—"something judicially rationalized as approximately equivalent is not enough"[19]—is most appropriate. In our view, therefore, appellant's position is sustained.[20]

---

17. An illustration of an acceptable computation, given factual constants such as inhere in *Gelb*, is the following: If the investment factors involved were constant and it could be determined that the *maximum* income that could be produced from the corpus in a month was, for example, $500 then the relationship between the $300 monthly stipend and the $500 maximum income would define "specific portion" for marital deduction purposes, i. e.:

$300 being 3/5 of $500 then 3/5 of $69,245.85 would be the "specific portion" of the trust corpus from which the surviving spouse would be entitled to the entire income of $300 monthly *under maximum production circumstances*. Though in reality it might take the entire corpus to produce the monthly stipend, or even the necessity to invade corpus might be present, nevertheless, in line with *Gelb*, it could be said, after computing the theoretical maximum income, that the surviving spouse's income interest of $300 monthly represented the investment of 3/5 of the corpus. "Specific portion" would then be accurately defined for marital deduction purposes. Let it be re-emphasized, however, that the necessary constants are absent in the instant case upon which a computation may be based.

18. Citizens Nat'l Bank of Evansville, Exr. v. U. S., 2 Fed.Est. & Gift Tax Rep. § 12,394 at 8167–71 (April 11, 1966).

19. Id. at 8171.

20. For a like result under somewhat different facts see Flesher v. United States, 238 F.Supp. 119, 124 (N.D.W.Va.1965). See 4 Mertens, Law of Federal Gift & Estate Taxation 145 (July 1965 Monthly Supp.).

Sustaining the appellant's position is consistent with both the decedent's intent as expressed in his will and the purpose behind the marital deduction provision. The decedent's intent emerges rather clearly from Paragraph 11 of his will. In reciting that the monthly stipends were to be used exclusively for the survivor's sole and individual use, maintenance, and support, sums which he endeavored to make neither liable for any debts contracted by her, nor subject to her assignment, the decedent evidenced a desire to limit the survivor's control over the monthly stipend. By also limiting the amount of these stipends to a sum which could fall below the income production of the corpus, the decedent evidenced an intent to give to his surviving spouse only that which he thought would be proper for her support and maintenance. Such an interest falls short of expressing a desire to place in the hands of his survivor an interest akin to a fee simple, the only interest which Congress viewed as meeting the standards of marital deduction status.

The judgment of the United States District Court for the Middle District of Pennsylvania will be reversed and the case remanded for entry of summary judgment in favor of appellant.

GANEY, Circuit Judge (dissenting).

Clarence C. Young died on May 3, 1958. Surviving him were his widow, who was 42 years old at the time, and four children, whose ages are not disclosed by the record. He left a last will and testament in which the plaintiff was named executor and trustee of the estate. Item 6 thereof provided as follows:

"ITEM 6. I give, devise and bequeath one-half (½) of all the rest, residue and remainder of my estate, whatsoever and wheresoever the same may be, both real and personal, to which I may be entitled, or which I may have power to dispose of at the time of my death, unto my Trustee hereinafter named and designated, to have and to hold the same in trust, nevertheless, as hereinafter provided.

"(a) I direct my Trustee to pay out of the said income and corpus of the said estate unto my wife, Beatrice O. Young, the sum of Three Hundred Dollars ($300.00) per month for and during the period until my youngest child reaches the age of eighteen years and thereafter I direct my Trustee to pay to my wife, Beatrice O. Young, the sum of Three Hundred Fifty Dollars ($350.00) per month for and during the rest of her natural life.

"(b) If my wife survives me, she shall have the power, exercisable by Will, to appoint to her estate, or to others, any or all of the principal remaining at the time of her death. If my wife fails to appoint the entire principal to her estate or to others as above authorized, then upon her death (or if she predeases me, then upon my death) any principal remaining at that time shall be paid over to my children on the same terms and conditions as under Item 7 of this my Will."

It is to be noted the surviving widow is to have the income from all of the trust estate, as well as the power of appointment over the same by her last will and testament as to all or any part thereof. At the time of the decedent's death, the value of the testamentary residuary trust passing under the will, to which all parties were in agreement, was $69,245.85. The widow also received outright from the decedent's estate at the time of his death, property and money valued at $41,751.02. One-half of the decedent's adjusted gross estate amounted to $99,874.98 and the executor of the estate reported this value as a marital deduction in the Federal estate tax return and took therein as a partial deduction the $41,751.02.

Section 2056(b) (5) of the Internal Revenue Code of 1954, 26 U.S.C. § 2056,[1]

---

1. This section reads as follows:

"(5) *Life estate with power of appointment in surviving spouse.*—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the in-

remedied previous legislation which failed to provide for a situation in which the surviving spouse received an interest less than all of the trust income or the power to appoint less than all of the trust property, to the extent that, where the surviving spouse is entitled for life to all of the income from a "specific portion" thereof with power in the surviving spouse to appoint such "specific portion", it will qualify for the marital deduction. The phrase "specific portion" is nowhere defined in the statute, but Treasury Regulations on Estate Tax (1954 Code), Sec. 20.2056(b)–5 [2] so does, and therein it provides as set forth below that the surving spouse's right to income must be a fractional or percentile share of the trust corpus.

The Commissioner of Internal Revenue disallowed any part of the $69,245.85, the value of the trust corpus to be included in the marital deduction and allowed only the $41,751.02, and assessed a deficiency estate tax of $14,966.23 plus

interest at $2,608.22 against the estate. The executor paid the deficiency tax plus interest and brought this action in the United States District Court for the Middle District of Pennsylvania to recover those amounts. Both parties moved for summary judgment and the court below decided in favor of the executor in 235 F.Supp. 941, and the United States has prosecuted this appeal.

It is the Government's contention here that (1) since the surviving spouse is not entitled to all the income from the entire corpus during her lifetime, because under the terms of the decedent's will income from the trust could have exceeded $300.00 per month and the surplus would then have to be accumulated and therefore the trust becomes disqualified.[3] Furthermore, (2) the $300.00 per month allotted as income to the widow is not in conformity with the Treasury Regulation cited above since it is not fractional or percentile and no part of it, accordingly, could qualify for

come from the entire interest, *or all the income from a specific portion* thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse. * * * " (Emphasis supplied.)

2. This section, in pertinent part, reads as follows:
"Marital Deduction ; Life Estate with Power of Appointment in Surviving Spouse.
"(c) *Definition of 'specific portion.'* A partial interest in property is not treated as a specific portion of the entire interest unless the rights of the surviving spouse in income and as to the power constitute a fractional or percentile share of a property interest so that such interest or share in the surviving spouse reflects its proportionate share of the increment or decline in the whole of the property interest to which the income rights

and the power relate. Thus, if the right of the spouse to income and the power extend to one-half or a specified percentage of the property, or the equivalent, the interest is considered as a specific portion. On the other hand, if the annual income of the spouse is limited to a specific sum, or if she has a power to appoint only a specific sum out of a larger fund, the interest is not a deductible interest. Even though the rights in the surviving spouse may not be expressed in terms of a definite fraction or percentage, a deduction may be allowable if it is shown that the effect of local law is to give the spouse rights which are identical to those she would have acquired if the size of the share had been expressed in terms of a definite fraction or percentage * * *."

3. See S.Rep. No. 1013, Part 2, 80th Cong., 2d Sess., p. 17 (1948–1 Cum.Bull. 285, 342–343), U.S.Code Cong.Service 1948, p. 1239 : "(3) The surviving spouse must be entitled to the income from the corpus of the trust annually, or at more frequent intervals. This requirement disqualifies any trust the income of which is required to be accumulated or may, in the discretion of the trustee, be accumulated."

the marital deduction. The court below is in agreement with the first portion of the Government's contention that the plaintiff is not entitled to take as a marital deduction the value of the property passing to the spouse under the testamentary residuary trust. However, on the other hand, the contention of the executor is that since the trust makes provision for setting up a monthly income to the surviving spouse, and she alone, under the will, was granted all of the income from the trust corpus, as well as being given power to dispose of all of her interest by appointment, the plaintiff was entitled to take as a marital deduction the value of the $300.00 per month as a "specific portion" as may be computed actuarially. Since the surviving spouse is absolutely entitled to, presently, $300.00 per month, and if this amount is construed to represent income from corpus, then the amount of the corpus which would yield this income could be ascertained and regarded as qualifying as a "specific portion" for the marital deduction. Here, the court rejects the Government's second contention and agrees with the above contention of the executor since the underlying purpose of Congress in enacting the marital deduction provision of the statute was that it might conform to the pattern of state law in those states which permit transfer free of taxes of one-half of the known community property to the surviving spouse in what has been referred to as community property states. It is, accordingly, our duty to construe the statute as liberally as we can in order to effectuate such policy.

The value of this right was computed by multiplying together the following factors: $300.00 (amount of monthly payment); 12 (number of months in a year); 1.0159 (factor for monthly payments) and 17.3911 (factor for the discount rate of 3½% over the period of the widow's life expectancy). See Sec. 20.2031–7 of the Treasury Regulations of the Estate Tax provisions of the 1954 Internal Revenue Code, 26 C.F.R. Part 20–29 (Rev'd 1961) Sec. 20.2031–7.

Citizens National Bank of Evansville v. United States, (S.D.Ind.1965), 65–1 USTC ¶ 12,302, a similar case, was decided in this way. This right had a value, according to this actuarial computation, of $63,663.43. The executors contend that this was a "specific portion" of the trust corpus and that the Treasury Regulation so far as it required a fractional or percentile part of the trust was invalid as being the only and exclusive indication of Congressional intent.

With this contention of the executor, I likewise agree. While, as I have indicated, all of the value of $69,245.85 could not be taken as a marital deduction, certainly $300.00 monthly for life devised in trust for his wife had a value at the time of his death and this value could be related to, or be a specific portion of, the entire corpus, and, as determined, it amounted to $63,663.43. This figure is reached after a reasonable calculation of the present worth of $300.00 over the life expectancy of the wife. I do not take into consideration fluctuation, wide or narrow, of the value of the corpus or the income thereon, over what would be the life expectancy of the wife, since the marital deduction is taken only once, at the death of testator, and I determine then what could be its value and not what might ultimately happen. "We cannot wait, like 'Monday morning quarterbacks,' to see what actually happened, but must concern ourselves with what could have happened." Bookwalter v. Lamar, 323 F.2d 664, 670.

It is in conformity with this that I do not take into consideration the $350.00 stipend somewhat later to be paid to the beneficiary, as it is prospective of an exigency which might never occur, and, as has been indicated, I take the marital deduction but once and at the date of the testator's death and hence the amount of the stipend at that time. This construction does not strain the statutory intent nor does it, in any wise, work a change in the phrase, "specific portion", and is fully in accord with the mandate of the stat-

ute that anyone seeking the marital deduction must satisfy the requirements thereof, which is the requisite rule in statutory construction. United States v. Olympic Radio & Television, Inc., 349 U. S. 232, 235, 75 S.Ct. 733, 99 L.Ed. 1024; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

The final point of the majority here is an attempt to extract, from paragraph 11 of the testator's will, an intent by him to "limit the survivors' control over the monthly stipend", thus not making it akin to a fee simple.

Paragraph 11 merely provides that the fund created for the wife is for her "sole and separate use, maintenance and support" and not "only that which he thought would be proper for her support and maintenance", as stated by the majority.

As a matter of fact, this paragraph of the will has no real bearing on the issue here presented, for if the testator had provided a percentile interest for the wife, instead of a monthly stipend, this paragraph would have been equally applicable to it, so even if expressed in a percentile interest, the majority, taking the position they do here, would thus be defeating their own argument.

Since the wife gets all of the income from the specific portion and has the power of appointment over all of it, this method of determining the specific portion of the corpus by evaluating the life interest at the time of the testator's death is, in my judgment, neither inconsistent nor irreconcilable with the statutory requirement.

Furthermore, while this formula may not be a perfect one, its components are fair and reasonable and tested by Governmental experience and, therefore, it seems but just that some value be given the stipend at the testator's death in order to qualify for the marital deduction, in conformance with the desire of Congress to give full effect to its marital deduction in order that it might level off any inequality resulting from community property states, rather than let the field lie fallow and adopt a sterile attitude of defeatism because the testator has not resorted to fractional or percentile figures.

The value of the "specific portion" being ascertained at $63,663.43 within the intendment of the statute, plus the $41,757.02 already taken as a deduction, therefore exceeds the allowable marital deduction of $99,874.02, and therefore $58,117.00 of the $63,663.43, the value of the "specific portion", should be allowed additionally.

Accordingly, I would affirm the judgment of the lower court.

STALEY, Chief Judge, and McLAUGHLIN, Circuit Judge, join in this dissent.