**Rose GELB, Executrix, Victor Edwin Gelb, Manufacturers Trust Company, Executors, of the Estate of Harry Gelb, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 33, Docket 26952.

United States Court of Appeals
Second Circuit.

Argued Nov. 30, 1961.

Decided Jan. 22, 1962.

Sanford Saideman, New York City, for petitioners.

Morton K. Rothschild, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A Jackson, Robert N. Anderson, Attys., Dept. of Justice), Washington, D. C., for respondent.

Before CLARK, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge.

The executors under the will of Harry Gelb petition for review of a decision of Judge Opper in the Tax Court, 19 T.C.M. 987, which sustained the Commissioner's determination that a residuary trust created by the will did not qualify for the marital deduction. We agree that no deduction was warranted under § 812(e) (1) (F) of the Internal Revenue Code of 1939, as added by § 361(a) of the Revenue Act of 1948, c. 168, 62 Stat. 110, 117–118, 26 U.S.C.A. § 812(e) (1) (F), which was in effect at Gelb's death. However, we hold that a "specific portion" of the trust qualified for the deduction under the retrospective amendment of that section made by § 93(a) of the Technical Amendments Act of 1958, 72 Stat. 1606, 1668.

I.

The critical provisions of the residuary clause of the will, executed May 27, 1953, are set out in the margin.[1] At the

1. "FIFTH: All the rest, residue and remainder of my property, whether real or personal, and wheresoever situated which I may own or to which I may be entitled at the time of my death, I give, devise and bequeath to my Trustees here-

date of Gelb's death, November 16, 1953, the governing statute, cited above, provided that "an interest in property passing from the decedent in trust" should qualify for the marital deduction "if under the terms of the trust his surviving spouse is entitled for life to all the income from the corpus of the trust, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire corpus free of the trust (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the corpus to any person other than the

inafter named IN TRUST nevertheless, to invest, reinvest, and keep the same invested for and during the life of my beloved wife, ROSE GELB, and to collect and pay over to her during her life, in monthly installments, the net income therefrom. In the event that the net income payable to my beloved wife during any year shall amount to less than Ten Thousand ($10,000.00) Dollars, I direct my Trustees to draw upon the principal of the trust fund to the extent of such deficit, and pay such difference to my beloved wife, it being my intent that my beloved wife shall receive at least the sum of Ten Thousand ($10,000.00) Dollars per year in installments of Eight Hundred Thirty-Three and 33/100 ($833.33) Dollars per month from my estate during her life."

\* \* \* \* \*

"In the event that after my death, any of my daughters shall marry and my wife desires, in the sole exercise of her discretion, to make a wedding gift to such daughter, then in that event on the demand of my wife in her sole discretion, I direct that my Executors and Trustees pay to my such daughter out of said trust fund such sums as my wife may demand not exceeding Three Thousand ($3,000.00) Dollars for each daughter that may marry. It is my intention that the payment referred to in this paragraph shall be in addition to all other payments provided to be made to my wife by this Will.

"I particularly wish to provide for the support and education of my youngest daughter, CLAIRE LILA GELB. Accordingly, I direct that if, in any year or years, my individual Trustees desire funds from said trust fund to provide for the education, maintenance and up-bringing of my said youngest daughter, CLAIRE LILA GELB, then upon application of my individual Trustees, in their sole discretion, my Executors and Trustees are hereby directed to pay to my beloved wife such sums as such individual Trustees shall in writing request, not exceeding the sum of Five Thousand ($5,-000.00) Dollars per year and I author-ize my individual Trustees to apply said sums so requested and paid for the proper support, maintenance, education and up-bringing of my said daughter, CLAIRE LILA GELB. The receipt of my individual Trustees for such sums shall constitute an acquittance therefor. The said payments referred to in this numbered paragraph shall be in addition to all other payments provided for by this Will to be made during the lifetime of my said wife."

\* \* \* \* \*

"Upon the death of my said wife, my Trustees are directed to pay over and distribute the then corpus of this trust, to her estate or to any persons or corporations, in such estates, interest and proportions, either outright or in trust and in such manner, without any restriction or limitation whatsoever, as my said wife shall validly appoint by her Last Will and Testament. In default of such valid appointment, the then corpus shall, upon the death of my said wife, be distributed outright or in trust as provided for in paragraph 'SIXTH' of my said Will, as though my wife had predeceased me."

\* \* \* \* \*

"EIGHTH: I hereby nominate, constitute and appoint my beloved wife, ROSE GELB, my beloved son, VICTOR EDWIN GELB, and MANUFACTURERS TRUST COMPANY OF THE CITY OF NEW YORK, as Executors and Trustees of and under this my Last Will and Testament.

"If my said wife, ROSE GELB, or my said son, VICTOR EDWIN GELB, shall predecease me or for any reason shall fail or refuse to qualify as Executor or Trustee or should either die after qualifying, then and in such event, I direct that my beloved daughter, RUTH GELB, now known as RUTH GILBERT, be appointed substitute Executrix and Trustee hereunder, in his or her place and stead, and this Will and all the provisions thereof shall be read and construed in the same manner and shall have the same operation and effect as if her name were originally inserted herein as Executrix and Trustee."

surviving spouse." The statute added that the provision "shall be applicable only if, under the terms of the trust, such power in the surviving spouse to appoint the corpus, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

■ There is no doubt that the residuary trust would fit the statute save for the paragraph with respect to Claire. We find no merit in the Commissioner's contention that this provision violated the requirement that the surviving spouse must be "entitled for life to all the income from the corpus of the trust." The language of the will is plain that the provision in regard to Claire was an additional power to invade corpus, not one to divert income from the widow; if the language were ambiguous, which it is not, the fact that the trust income ranged only from some $3000 to $3500 a year, a probability hardly unknown to the testator, would be determinative in taxpayers' favor. However, the Commissioner and the Tax Court were right that the provision infringed the requirement that there must be "no power in any other person to appoint any part of the corpus to any person other than the surviving spouse," and the converse that the power of the surviving spouse to appoint the entire corpus must be "exercisable by such spouse alone and in all events."

If the draftsman of the will had worded the provision for Claire as he did the clause with respect to wedding gifts for his daughters, there would have been no difficulty. If these happy events should occur, Rose was free in her individual capacity to demand or not to demand an additional $3000 out of corpus. Taxpayers contend that although the power with respect to Claire was vested in two trustees, Rose was one of them and that her discretion was similarly unlimited, hence no person other than Rose could "appoint any part of the corpus to any person other than" herself. They add, as a makeweight, that any payments for Claire's benefit were to be made to Rose.

The contention fails on two counts: (1) The will did not make it certain that Rose would be a trustee throughout her life; and (2) equity would not permit her as a trustee to veto, in her individual interest, payments to Claire required to carry out the testator's stated purpose. The basic argument thus failing, the makeweight alone cannot carry the burden; the interposition of Rose as a conduit, at least after Claire attained majority, see Regulations 105, § 81.47a(c) (9), added by T.D. 6529, I.R.B. 1961–9 at p. 73, would not prevent the appointment's being "to" Claire.

(1) In sharp contrast to the clause as to the wedding gifts and, we must presume, for sufficient reasons, the power with respect to Claire was vested in "my individual Trustees." At Harry's death it was not certain that Rose would be one, or would remain such throughout her life; legal incapacity on her part would prevent this, 1 Scott, Trusts (2d ed. 1956), § 107, at p. 776. If it did, Victor, or Victor and Ruth, would have the power to appoint to Claire. Under the 1939 Act, the entire trust was disqualified for the deduction by the existence of such a power in a person other than the spouse to pay even a limited amount to a person other than the spouse. See Estate of Raymond Parks Wheeler, 26 T.C. 466 (1956); Estate of Allen L. Weisberger, 29 T.C. 217 (1957).

■ Taxpayers might seek to counter this by pointing to rulings that when a sufficient power of appointment is given to the surviving spouse personally, the trust qualifies for the marital deduction even though the spouse is incompetent on the day of death, Rev.Rul. 55–518, 1955–2 Cum.Bull. 384; see 4 Mertens, Law of Federal Gift and Estate Taxation (1959) § 29.38, at p. 570, and then arguing that, by the same token, the mere naming of Rose as trustee sufficed. This does not follow. In the absence of contrary provision, the effect of incompetency on a power held personally is a suspension of the power for the period of the incapacity; the effect of incompetency on a trustee is removal from office. See 1 Scott, supra. The consequences of the difference are illustrated by Starrett v.

Commissioner, 223 F.2d 163 (1 Cir. 1955), where the testator had given his spouse a qualifying power but had provided for its termination in the event of her legal incapacity. The Court, through Chief Judge Magruder, held the sum in controversy not available for the marital deduction, relying ultimately on the distinction between the absolute termination provided for and the mere suspension that would have occurred if the holder of the power had become incompetent, with nothing said in the will, 223 F.2d at 167. Here incapacity on Rose's part would cause a termination of her status as trustee, with effect similar to the termination of the widow's power in Starrett. In that event another person, Victor, or other persons, Victor and Ruth, would have power to appoint part of the corpus to Claire. Estate of Morton H. Spero, 34 T.C. 1116 (1960).

Miller v. Dowling, 1956–1 USTC ¶11646 (S.D.N.Y.1956), relied on by taxpayers, is distinguishable. There the widow in her individual capacity had a sufficient power to invade corpus and as trustee held a power to terminate the trust. The court held that a provision for a successor trustee in the event of the trustee's incapacity did not render the deduction unavailable. Although a successor trustee would take over the power to terminate the trust, the court said that, because of N.Y.Civil Practice Act, § 1357,[2] the widow's power to invade would be protected in the event of her incapacity, so that the trustee's power to terminate could not be exercised in derogation of the widow's rights. Thus it concluded that the trust could be terminated during the widow's life only by her own release, and the deduction was available. No similar reasoning would prevent invasions of principal for the benefit of Claire by Victor, or by Victor and Ruth,

in the event of Rose's not serving as trustee; that would be carrying out the testator's intent, not frustrating it.

(2) Even if it were certain that Rose would always be a trustee, she could not in her individual interest block payments required "for the proper support, maintenance, education and up-bringing" of Claire. Whereas the testator indicated no interest in whether the wife bestowed wedding gifts or not, he made it clear that he "particularly wish[ed] to provide for the support and education" of Claire, and the rest of that paragraph must be read as requiring the trustees to exercise their discretion in that light. The cases cited by petitioners in which equity refused to order any payments did not involve powers in trust but absolute gifts with precatory words of hope that the recipient would take care of someone else or pay him a certain amount. Closer to the instant case is Collister v. Fassitt, 163 N.Y. 281, 57 N.E. 490 (1900). The testator directed his wife to pay money to the testator's niece "out of the property hereinafter given and bequeathed to her * * * as my said wife shall from time to time, in her discretion, think best so to do." No amounts were specified, nor was any standard enunciated to govern the exercise of discretion. Yet the niece was held to have a right enforceable in equity. With the specification of an amount and the articulation of a standard in the instant case, an equitable right in Claire to compel the trustees to exercise the power as dictated by her interest and free from any adverse one of their own follows *a fortiori*.[3] See 1 Scott, Trusts (2d ed. 1956), § 25.2, at pp. 194–195. In Phillips v. Phillips, 112 N.Y. 197, 19 N.E. 411 (1889), a sum was specified, but the wife was to pay only "if she find it always convenient to pay"; the beneficiary was held to have an enforceable right. See

**2.** "The court exercising jurisdiction over the property of either of the incompetent persons, specified in the last section, must preserve his property from waste or destruction; and, out of the proceeds thereof, must provide for the payment of his debts and for the safe keeping and maintenance, and the education, when re-

quired, of the incompetent person and his family."

**3.** In fact, the trustees seem to have acted precisely in this way; they drew $5,000 from corpus for Claire's benefit in 1954 and in 1956–1959 inclusive.

also *Colton v. Colton,* 127 U.S. 300, 8 S.Ct. 1164, 32 L.Ed. 138 (1888).

## II.

■ The provision of the Internal Revenue Code of 1954, § 2056(b) (5), 26 U.S.C.A. § 2056(b) (5), with respect to the qualification for the marital deduction of trusts for the surviving spouse, altered the previous law in an important way. Under the earlier statute, unless a trust qualified in whole, no part of it did. The 1954 Code introduced a new concept —a qualifying "specific portion." Section 93(b) of the Technical Amendments Act of 1958, 72 Stat. 1606, passed after the petition here had been filed in the Tax Court but long prior to the decision, made the new dispensation applicable to estates of decedents who had died after April 1, 1948 and before August 17, 1954, when the provision of the 1954 Code took effect; we quote in the margin the 1939 Code provision as so amended.[4] However, neither the counsel who represented taxpayers in the Tax Court, the Commissioner, nor the Court itself, considered the effect of the amendment, as the Commissioner now properly concedes must be done.

Counsel representing the taxpayers in this court contends that if we reject his argument as to the entire trust, at least "a specific portion" qualifies for the marital deduction—namely, so much of the corpus as could not be diverted to Claire, the latter amount equalling the present value of $5,000 multiplied by Rose's expectancy (more accurately by Rose's and Claire's joint expectancy). The Commissioner says this is not what Congress meant by "a specific portion." He points to the example given in all the Congressional reports, both as to the 1954 Code and the 1958 amendment, namely, that if a testator leaves his spouse the annual income from one-half of the property, and gives her a power of appointment over one-half the property, then one-half the value of the property is deductible.[5] He points also to the reports on the 1954 Code which said "The bill makes it clear * * * that a right to income plus a general power of appointment over only an undivided part of the property will qualify that part of the property for the marital deduction." H.Rep. No.1337, 1954 U.S.Code Cong. & Adm. News, at p. 4119, S.Rep.No.1622, 1954 id. at p. 4759, and to the Senate report on the 1958 Act, S.Rep.No.1983, 1958 id. at p. 4896, which said "Your committee, therefore, has amended the House bill to add a provision to conform the marital deduction provisions of the 1939 Code with the more realistic rules of the 1954 Code." He urges still more vigorously the language of the Regulations, first

---

4. "§ 812(e) (1) (F) [As amended by Sec. 93(a), Technical Amendments Act of 1958, P.L. 85–866, 72 Stat. 1606, 1668] —Life estate with power of appointment in surviving spouse.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

"(i) the interest or such portion thereof so passing shall, for purposes of subparagraph (A), be considered as passing to the surviving spouse, and

"(ii) no part of the interest so passing shall, for purposes of subparagraph (B) (i), be considered as passing to any person other then the surviving spouse. This subparagraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

5. H.Rep. No. 1337, 83rd Cong., 2d Sess., in 1954 U.S.Code Cong. and Adm.News, at p. 4462; S.Rep. No. 1622, 83d Cong., 2d Sess., in 1954 id. at page 5119; S.Rep. No. 1983, 85th Cong., 2d Sess., in 1958 id. at pp. 5029–5030.

adopted as § 20.2056(b)–5(c) under the 1954 Code, T.D. 6296, 1958–2 C.B. at p. 572, and later made applicable to estates entitled to the benefit of the 1958 amendment to the 1939 Code, as Regulations 105, § 81.47a(c)(3) by T.D. 6529, I.R.B. 1961–9 at p. 68, which we quote in the margin.[6]

■ The Commissioner does not argue that the divergence between the extent of Rose's right to income and her power to appoint prevents her interest from constituting a "specific portion." One of the purposes of the 1958 amendment was to remedy the situation under the 1939 Code wherein the deduction was lost altogether unless both these factors were 100%, S.Rep.No.1983, 85th Cong., 2d Sess., in 1958 U.S.Code Cong. and Adm. News, at p. 5029, and the Commissioner has recognized that "While the rights over the income and the power must co-exist as to the same interest in property, it is not necessary that the rights over the income or the power as to such interest be in the same proportion," Regulations 105, § 81.47a(c)(2), added by T.D. 6529, I.R.B. 1961–9 at p. 67, the deduction being limited to whichever is smaller as between the share over which the power to appoint corpus extends and that to which the income rights pertain. The Commissioner's argument is rather that here even the smaller portion, that over which the right to appoint corpus extends, does not qualify because it is not the "fractional or percentile share" demanded by the Regulations, see fn. 6 supra.

■ We fail to comprehend why a life interest in a residuary trust which at testator's death amounted to $200,000 and a qualifying power to appoint $100,000 out of it, or a life interest in such a trust and a qualifying power to appoint all but $100,000 out of it, do not relate to a "specific portion," namely, $100,000, quite as much as if the testator had used a fraction or a percentage with respect to the power over corpus. Example (1) attached to the definitional paragraph of the Regulations says the reason why a trust where the spouse has been given a qualifying power over a specified dollar amount does not meet the statutory test is that "there is no certainty that the value" of the entire corpus "will be the same on the date of the surviving spouse's death as it was on the date of the decedent's death," so that a specific dollar amount fails to meet the Regulations' stricture that the widow's share must reflect "its proportionate share of the increment or decline in the whole of the property" in trust. This elaboration of the statutory language seems to bespeak a desire that the risk of change in value, up or down, should be shared equally by the spouse and the Government. True, when the power is to draw a specific dollar amount the spouse bears no risk of change in the value of the corpus, unless, indeed, it shrinks below the dollar figure; and when the power is over all the corpus except a named dollar amount, the spouse is saddled with a disproportionate risk. However, Congress spoke of a "specific portion," not of a "fractional or per-

---

6. "DEFINITIONS OF 'SPECIFIC PORTION'. A partial interest in property is not treated as a specific portion of the entire interest unless the rights of the surviving spouse in income and as to the power constitute a fractional or percentile share of a property interest so that such interest or share in the surviving spouse reflects its proportionate share of the increment or decline in the whole of the property interest to which the income rights and the power relate. Thus, if the right of the spouse to income and the power extend to one-half or a specified percentage of the property, or the equivalent, the interest is considered as a specific portion. On the other hand, if the annual income of the spouse is limited to a specific sum, or if she has a power to appoint only a specific sum out of a larger fund, the interest is not a deductible interest. Even though the rights in the surviving spouse may not be expressed in terms of a definite fraction or percentage, a deduction may be allowable if it is shown that the effect of local law is to give the spouse rights which are identical to those she would have acquired if the size of the share had been expressed in terms of a definite fraction or percentage."

centile share," and nowhere indicated any policy that deductibility of a "specific portion" should be governed by the possibility that the spouse's portion will change in value relatively more or less than the clearly nonqualifying part. Neither has the Commissioner given us any reason why this should be so. A basic purpose of the marital deduction was to reduce the discrimination against taxpayers not in community property states, S.Rep.No.1013, 80th Cong., 2d Sess., in 1948–1 C.B. at pp. 305–306; see Commissioner of Internal Revenue v. Estate of Ellis, 252 F.2d 109, 112 (3 Cir.1958). The liberalization in the provision as to trusts, made in the 1954 Code and applied to earlier years by the Technical Amendments Act, was evidently designed to permit certain normal testamentary dispositions without the total forfeiture of the deduction that the 1939 Code had occasioned in some instances. That Congress gave a fractional interest as an example of a "specific portion" does not warrant a construction that Congress did not mean to include other instances fairly within the language and the underlying policy. We disapprove Regulations 105, § 81.47a(c)(3) [1954 Code—Regs. § 20.2056(b)–5(c)] insofar as it would limit a "specific portion" to "a fractional or percentile share."

■ However, the taxpayers here encounter an added difficulty. Rose's qualifying power was not over the entire corpus less a sum described in dollars, but over all less a sum which can at best be estimated by actuarial calculations. It is surely arguable that in the latter case the power is not exercisable over a "specific portion" even though in the former it is—the joint lives of Rose and Claire might differ substantially from their actuarial expectancy. Yet the use of actuarial tables for dealing with estate tax problems has been so widespread and of such long standing [7] that we can-

---

7. The use of life expectancy tables was sanctioned by the Commissioner in the 1863 edition of "Boutwell's Manual" at p. 203, in the context of a group of regulations which, according to Carlton Fox, "appear to embody the first that were promulgated in respect of taxes on legacies." Since the federal succession tax enacted in 1862 was an inheritance tax, see Warren & Surrey, Federal Estate and Gift Taxation (1961 ed.), p. 2, it was necessary to value legacies individually, and for that purpose the 1863 regulations provided that remainders and life annuities should "be estimated by Carlisle's, or other approved tables of life annuities." As the regulations grew more elaborate, the Commissioner added examples to aid in applying the life tables "in ascertaining the values of life and reversionary interests," Instructions Concerning the Tax on Legacies, Distributive Shares, and Successions, pp. 24–25 (Series 7—No. 3, 1878). The change to the estate tax concept in the Revenue Act of 1916, c. 463, 39 Stat. 756, and its immediate successor, the Revenue Act of 1918, c. 18, 40 Stat. 1057, was accompanied by contemporaneous acceptance of the use of life expectancy tables to value "annuities, life, and remainder interests," art. 20, Regulations 37 (1919 ed.)

Introduction of the charitable deduction to the estate tax in § 403(a) (3) of the 1918 Act, 40 Stat. at 1098, led to instant acquiescence in the use of mortality tables to value charitable remainders, art. 53, Regulations 37 (1919 ed.). Perhaps their most frequent use in this area is to compute a gift to charity made subject to a life estate, see Merchants National Bank v. Commissioner, 320 U.S. 256, 259 fn. 6, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Commissioner v. Estate of Sternberger, 348 U.S. 187, 190–192, 75 S.Ct. 229, 99 L.Ed. 246 (1955). The Supreme Court has even gone so far as to compel their use for such a computation when the life tenant had died before the case came to the Court, Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). See generally 4 Mertens, Law of Federal Gift and Estate Taxation (1959), § 28.30.

Other uses of mortality tables in Federal taxation are manifold. A typical application under the estate tax occurs if a vested remainderman dies before the life beneficiary, William Korn, 35 B.T.A. 1071 (1937). For purposes of the gift tax, they are used to value gifts of remainders, Henry F. du Pont, 2 T.C. 246 (1943); Betty Dumaine, 16 T.C. 1035 (1951), and of life estates and annuities, F. J. Sensenbrenner, 46 B.T.A. 713 (1942). They have long been utilized to value annuities, not only for estate and gift tax purposes, but to allocate between return of capital and incre-

552

not assume Congress would have balked at it here; the United States is in business with enough different taxpayers so that the law of averages has ample opportunity to work.

 The case is remanded to the Tax Court to determine how much of the residuary trust qualifies for the marital deduction under the principles herein stated. The Court should consider whether the power in respect of Claire is not a qualifying power to the extent that it is exercisable during her minority, Regulations 105, § 81.47a(c)(9), added by T.D. 6529, I.R.B. 1961–9 at p. 73.

mental return for income tax purposes. See GCM 8826, C.B. IX-2, p. 194 (1930); Florence L. Klein, 6 B.T.A. 617 (1927); Guaranty Trust Co., 15 B.T.A. 20 (1929); Estate of Sarah A. Bergan, 1 T.C. 543 (1943). They are used also to derive the "adjusted uniform basis," the 1954 Code's way of splitting basis between life tenant and remainderman in the event, for instance, either wishes to sell his interest while both are still alive. See Regs. § 1.1014–5(a) (1); 3A Mertens, Law of Federal Income Taxation (Zimet & Weiss rev. vol. 1958), § 21.71, at p. 200.