ESTATE OF C. S. ALEXANDER, DECEASED, BRANCH BANKING & TRUST COMPANY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2408–80.    Filed January 5, 1984.

*Frank P. Meadows, Jr.*, for the petitioner.
*Frank C. McClanahan*, for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency of $165,301.48 in the Federal estate tax of the Estate of C. S. Alexander. After concessions, the sole issue for decision is whether a certain bequest left to a residuary trust qualifies for the marital deduction, and, if not, whether a savings clause operates to save the marital deduction.

The facts have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

Petitioner Estate of C. S. Alexander is represented herein by its executor, Branch Banking & Trust Co., which had its principal office in Wilson, N.C., at the time it filed the petition herein. The Federal estate tax return was timely filed with the Internal Revenue Service, Memphis, Tenn.

On May 12, 1977, C. S. Alexander (decedent) died testate. Decedent's will, after providing for various specific bequests, devised the remainder of his estate to a trustee to hold in a residuary trust for the benefit of decedent's wife, Mary R. Alexander (Mary), other heirs, and certain charitable beneficiaries.

Upon receipt of the residuary estate, the trustee was to determine a specific portion thereof pursuant to a formula

clause that would be designated as the "Wife's Share."[1] This amount, which was a specific dollar amount,[2] was to be approximately equal to the maximum Federal estate tax marital deduction allowable in determining the decedent's taxable estate. The remainder of the residuary trust, i.e., all the corpus in the residuary trust in excess of the amount constituting the wife's share, was designated as the "Balance."

Mary was to receive all of the income of the residuary trust.[3] In addition, if Mary survived for a period of 6 months after the decedent's death, she was given a testamentary power of appointment "over that portion of this trust, which shall be equal in amount to my wife's share."[4] Upon the death of Mary, the balance of the residuary trust was to be distributed pursuant to the decedent's will to specified beneficiaries.

In addition to these provisions, decedent's will included the following "savings clause":

It is my intent to cause the portion of this trust equal in amount to the Wife's Share to qualify for the marital deduction allowed by the Federal Estate Tax laws, therefore, if the entire amount subject to the power of appointment * * * shall not qualify for the marital deduction, then the power shall be exercisable over all of the trust principal constituting my Wife's Share as it exists upon the death of my wife.

Decedent's adjusted gross estate was $1,078,608.54. Petitioner sought to qualify the maximum amount, one-half of the reported adjusted gross estate, $549,416.95, as a marital deduction.[5] This amount consisted of the $36,775 worth of

[1]Specifically, the will provided that the—"Wife's share was to be an amount equal to the maximum estate tax marital deduction (allowable in determining the Federal estate tax on the gross estate) plus the sum of ten thousand dollars, diminished by the value for Federal estate tax purposes of all other items in my gross estate, which qualify for the marital deduction and which pass or have passed to my wife."

[2]It was so stipulated. Decedent's adjusted gross estate was $1,078.608.54. The wife's share equaled the maximum estate marital deduction (i.e., 50 percent of the adjusted gross estate) or $539,304.27; minus the value of items that passed directly to Mary that qualified for the marital deduction, $36,755, plus $10,000, for a total fixed dollar amount of $512,549.27.

[3]This provision was added to decedent's will by a codicil executed Aug. 26, 1976. Prior to the amendment made by the codicil, the will provided that the trustee was directed to pay at least quarterly, for the sole benefit of Mary, that percentage of the income of the trust commensurate with the percentage of the trust that represented the wife's share.

[4]It is important to note that Mary's testamentary power of appointment was over the amount of trust corpus equal to the wife's share, or $512,549.27, as of the date of *her* death. The wife's share, as previously discussed, was a fixed dollar amount determined as of the date of *decedent's* death.

[5]Petitioner originally reported an adjusted gross estate of $1,098,833.90 and therefore claimed one-half of such amount, or $549,416.95, as a marital deduction. Petitioner now concedes that, due to adjustments in the adjusted gross estate, the maximum allowable marital deduction is $539,304.27.

property passing to Mary under other provisions of the will and that portion of the residuary trust equal to the balance of one-half of the reported adjusted gross estate, or $512,641.95. In the statutory notice of deficiency, respondent eliminated the full value of the wife's share of the testamentary residuary trust from the claimed marital deduction; thus, he determined the amount of the allowable marital deduction to be $36,775.

The issue for decision is whether a bequest left to a residuary trust, which provided for the payment of all the income of the trust to decedent's widow and granted her a testamentary power of appointment over a specific dollar amount, qualifies for the Federal estate tax marital deduction.

Section 2056[6] allows as a deduction from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed to the decedent's surviving spouse. Section 2056(b) provides as a limitation that the marital deduction shall not be allowed if the interest passing to the surviving spouse is a life estate or other terminable interest.[7] However, section 2056(b)(5) provides an exception to this rule by providing that—

In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof * * * with power in the surviving spouse to appoint the entire interest, or such specific portion * * *

then the interest passing to the surviving spouse will qualify for the marital deduction.

The dispute in this case turns on the requirement of section 2056(b)(5) that the surviving spouse have the right to appoint "such specific portion." Section 20.2056(b)–5(c), Estate Tax Regs. (hereinafter the regulation), provides that—

A partial interest in property is not treated as a specific portion of the entire interest unless the rights of the surviving spouse in income and as to the power [of appointment] constitute a fractional or percentile share of a

---

[6] All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year in issue.

[7] Sec. 2056(b)(1) provides:

SEC. 2056(b). LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—
(1) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest * * *

property interest so that such interest or share in the surviving spouse reflects its proportionate share of the increment or decline in the whole of the property interest to which the income rights and the power [of appointment] relate. * * * [I]f the spouse has a power to appoint only a specific sum out of a larger fund, the interest is not a deductible interest.

Thus, the regulation requires that in order for a terminable interest in property left to the surviving spouse to qualify for the marital deduction, the surviving spouse's power of appointment must constitute the right to appoint a fractional or percentile share of the property. Moreover, the regulation provides that if the surviving spouse's power of appointment is only over a specific sum out of a larger amount, then the interest is not a deductible interest.

Petitioner admits that Mary's power of appointment extended only to a fixed dollar amount and is, therefore, in violation of the regulation, but it argues that insofar as the regulation requires that the power of appointment be expressed as a fractional or percentage interest, or its equivalent, it is invalid. Respondent counters that the regulation is a reasonable interpretation of the statute and therefore must be upheld.

The marital deduction was enacted in 1948, and the underlying purpose was to equalize the incidence of the estate tax in community property and common law jurisdictions. Since in a community property jurisdiction only one-half of the marital or community property was taxed in the estate of the first spouse to die, with the other one-half, if not consumed, being taxed in the estate of the surviving spouse, the equalization was accomplished by allowing a deduction to the estate of the first spouse to die of up to one-half of the value of the adjusted gross estate for noncommunity property that passed from decedent to the surviving spouse in such form that such one-half would be taxable in the estate of the surviving spouse, if not previously consumed. *Northeastern Pa. Nat. B. & T. Co. v. United States*, 387 U.S. 213 (1967).

Under community property laws, the surviving spouse retains an outright interest in one-half of the community property. However, Congress, in recognition of the fact that in common law States a customary mode of transferring property at death was to transfer less than the outright ownership of the property, allowed the deduction even where the interest transferred was less than outright ownership. The 1948

statute provided that a bequest in trust, with the surviving spouse entitled for life to *all* the income from the corpus of the trust, payable annually or at more frequent intervals, with power to appoint the *entire* corpus, would qualify for the deductions. However, in 1954, to avoid requiring a testator to create two separate trusts, one for his wife and one for his children, Congress revised the marital deduction statute to allow the deduction where a decedent gives his surviving spouse for life "all the income from the entire interest, or all the income from a specific portion," and a power to "appoint the entire interest, or such specific portion." The Committee reports stated that "The bill makes it clear that * * * a right to income plus a general power of appointment over only an undivided part of the property will qualify that part of the property for the marital deduction." H. Rept. 1337, 83d Cong., 2d Sess. 92 (1954). See also *Northeastern Pa. Nat. B. & T. Co. v. United States, supra* at 220.

Respondent, in sec. 20.2056(b)–5(c), Estate Tax Regs., quoted above, promulgated in 1958, 1958–2 C.B. 572, defined "specific portion" as used in the statute, to mean a "fractional or percentile share." Respondent has consistently relied on the requirement in the regulation that the interest must be a "fractional or percentile share" of a property interest to deny claimed marital deductions, just as he does in this case.

If there had not been so much judicial water over the dam on the invalidity of respondent's position, we would listen to his argument more sympathetically, because if the surviving spouse can appoint only the dollar amount of the interest given to her[8] under her deceased spouse's will, only that amount will be taxable in her estate under section 2041 and any increment in value of that interest between her death and the death of her husband will escape estate taxation. However, respondent has made the same argument in every case we have found that has come before the courts, and has lost the argument in every case. We therefore feel that if the statute is to be construed in accordance with respondent's regulation, it is up to Congress to change the language in the statute.[9]

---

[8]The marital deduction applies, of course, to transfers to a surviving spouse, be it husband or wife. For purposes of this opinion, we will assume that the wife was the surviving spouse.

[9]Since Congress has not changed the language for about 30 years, there may be good reasons for it to prefer the language it used. There was no change in the language used when the provision in

In *Gelb v. Commissioner*, 298 F.2d 544 (2d Cir. 1962), a testamentary trust gave decedent's wife the entire income of the trust for her life and a power of appointment by will over the corpus as it existed at the time of her death. The will also provided that the individual trustees of the trust could call upon the executors and trustees to pay to the wife up to $5,000 annually from the trust for the support and education of decedent's younger daughter. The Commissioner claimed that even though the wife received all the income and could appoint all of the corpus that remained at her death, the transfer did not qualify for the marital deduction because it did not give the wife the right to appoint a fractional or percentile share of the property as required by the regulation.

The Court disagreed with the Commissioner. It pointed out that there is no reason a dollar amount does not qualify for the marital deduction. It also noted that Congress used the words "specific portion" not "fractional or percentile share," and—

Nowhere indicated any policy that deductibility of a "specific portion" should be governed by the possibility that the spouse's portion will change in value relatively more or less than the clearly nonqualifying part. * * * A basic purpose of the marital deduction was to reduce the discrimination against taxpayers not in community property states. * * * We disapprove Regulations 105, section 81.47(a)(c)(3) [1954 Code—sec. 20.2056(b)–5(c), Estate Tax Regs.] insofar as it would limit a "specific portion" to a "fractional or percentile share." [298 F.2d at 551.]

In *Allen v. United States*, 250 F. Supp. 155 (E.D. Mo. 1965), the provision in the will under consideration gave the spouse all the income from a trust for her life, and the right to withdraw up to $5,000 from the corpus each year. The court held that the right to withdraw $5,000 per year was a power to appoint a "specific portion" of the corpus and it qualified for the marital deduction. The court noted that the Government conceded that all cases on the issue had been decided against it.

---

sec. 2056(b)(5) of the 1954 Code was made applicable to estates of decedents who had died after Apr. 1, 1948, and before Aug. 17, 1954, by sec. 93(b) of the Technical Amendments Act of 1958, 72 Stat. 1606. Furthermore, Congress used the same language in 1981 when it added sec. 2056(b)(7), which provides that certain "qualified terminable interest property" qualifies for the marital deduction. See sec. 2056(b)(7)(B)(iv) (Economic Recovery Tax Act of 1981, sec. 403(d)(1), Pub. L. 97–34, 95 Stat. 172, 302). As stated in *James v. United States*, 366 U.S. 213, 220 (1961): "There may have been any number of reasons why Congress acted as it did."

*Citizens National Bank of Evansville v. United States*, 359 F.2d 817 (7th Cir. 1966), involved a will which established a trust over which the spouse was given the power to appoint the entire remainder of the trust by will. The spouse was also to receive $200 to $300 per month for life from the trust. The court, with one dissent, held that the income provision gave the spouse all the income for life from a specific portion of the trust and that the actual value of those payments qualified for the marital deduction under section 2056(b)(5) of the Code. The court discussed the purpose of the marital deduction and its legislative history, and also the purpose of the terminable interest rule to deny the possibility that marital deduction property would avoid the estate tax in the estate of the surviving spouse. Relying primarily on *Gelb v. Commissioner*, *supra*, the court rejected respondent's argument that since the income provision did not give the spouse the right to receive all the income from a fractional or percentile interest in the corpus, it did not qualify for the marital deduction.

The Supreme Court took cognizance of this issue in *Northeastern Pa. Nat. B. & T. Co. v. United States*, *supra.* In that case, decedent's will created a trust and gave one-half of the remainder of his estate to the trust, giving the surviving spouse a power to appoint the entire corpus by will, and also directed the trustee to pay her out of the income or corpus of the trust, if necessary, $300 to $350 per month for life. The Government argued that this did not give the spouse a fractional or percentile share of the income from the trust, so it did not qualify for the marital deduction. The District Court held for the taxpayer, but the Third Circuit Court of Appeals reversed. The Supreme Court, with three dissents, reversed the Court of Appeals, holding for the taxpayer.

The majority of the Court held that the value of the $300 per month was all the income from a specific portion of the trust and qualified for the marital deduction. The Court based its conclusion on the purpose of the marital deduction to equalize the incidence of tax between community property and common law States; the legislative history of the provision, which used the words "undivided part" with no hint that it intended that the deduction could be defeated merely because the "specific portion" was not expressed as a fractional or percentile share; and the congressional intent to afford a liberal

estate-splitting possibility where the deductible one-half of decedent's estate would ultimately, if not consumed, be taxable in the estate of the survivor. The majority went on to observe that such a provision should not be construed so as to impose unwarranted restrictions on the availability of the deduction, and that the Commissioner's argument that only a grant of income from a fractional or percentile share of the trust subjects the surviving spouse to the vagaries and fluctuations of economic performance of the corpus in the way an outright owner would be, is irrelevant. The Court observed that the method used to determine the portion of the trust that qualified for the marital deduction would not result in any of the combined estate escaping taxation and noted that the Commissioner's claim, that if the portion was computed in a different way there was a chance of avoidance of estate tax, was a different matter which was not before the Court.

The dissenting opinion of Justice Stewart relied primarily on the fact that allowance of a dollar amount as a marital deduction opens the door to part of the marital estate escaping taxation, thus giving the common law States an advantage over community property States equalization of which was the principal objective of the marital deduction. The dissenting opinion also stated that "the way in which the Court defines 'specific portion' with regard to the survivor's income rights will inevitably affect the meaning of 'specific portion' with regard to the power of appointment." 387 U.S. at 227 n. 2.

Finally, in *Estate of Meeske v. Commissioner*, 72 T.C. 73 (1979), affd. sub nom. *Estate of Laurin v. Commissioner*, 645 F.2d 8 (6th Cir. 1981), the Tax Court had under consideration a will which, upon his death, divided decedent's estate into two portions, a marital portion and a residual portion. The allocation was to be made by an equalization clause designed to result in the lowest estate tax possible on the combined estates of decedent and his surviving spouse. The surviving spouse was to receive all the income for life from the marital portion and was given a power of appointment over the entire corpus of the marital portion on her death. Despite the fact that these provisions created two separate portions which could increase or decrease individually and thus left little danger that any part of possible appreciation in the trust corpus would go untaxed, the respondent denied the marital

deduction because the language did not comply with section 2056(b)(5); no specific portion. The Court, in holding for the taxpayer, found this argument to be inapposite.

The Court went on to find that respondent's reliance on section 20.2056(b)–5(c), Estate Tax Regs., and *Northeastern Pa. Nat. B. & T. Co. v. United States, supra,* was misplaced. It noted that the Supreme Court specifically held in *Northeastern* that the regulation was invalid, at least insofar as it requires the income interest to be expressed in terms of a fractional or percentile share; also that those Courts which have considered the regulation's definition of a specific portion as requiring a general power of appointment to be exercisable over a fractional or percentile share of the corpus have likewise held the regulation to be invalid, citing the cases discussed above. But even assuming the continued vitality of the regulation, it simply did not apply to that case, the Court noted, because the wife's rights were in the entire specific portion of both the income and corpus.

Respondent has not cited us any case which supports his regulation or his position in this case. Instead, he attempts to distinguish all of the above cases, primarily on the ground that none of them specifically involved the right of the surviving spouse to appoint a fixed dollar amount of the *corpus.*[10] Even if this were so, we cannot see our way clear to approach this issue in a limited context only. Congress used the same words "specific portion," which we find to be unambiguous, in stating the requirements with respect to both income and corpus to qualify for the marital deduction. Under the circumstances, we cannot say that Congress intended a different meaning to apply to the two categories.

Furthermore, while *Citizens National Bank of Evansville* and *Northeastern Pa. Nat. B. & T. Co.* were concerned with indefinite income provisions, both *Gelb* and *Allen* were applying the requirement to corpus. *Estate of Meeske* involved both income and corpus provisions. But it is clear from the opinions in all of these cases that the courts did not believe that Congress intended that a "specific portion" be limited to a

---

[10]We are uncertain whether respondent, in relying on his regulatory definition of "specific portion" to require a "fractional or percentile share" despite repeated losses on that argument in the courts, is trying to resurrect his definition or is trying to plug a possible loophole that may have been left by the statutory language used by Congress.

"fractional or percentile share." Both *Gelb* and *Northeastern Pa. Nat. B. & T. Co.* held the regulation invalid as applied in the circumstance before them. And see *Estate of Meeske v. Commissioner*, 72 T.C. at 79.

Respondent's argument, that to conclude that the power to appoint a fixed dollar amount of corpus to qualify for the marital deduction would permit appreciation in the corpus to escape taxation altogether, has also been before the courts, and does not appear to have unduly impressed them. In *Northeastern Pa. Nat. B. & T. Co.*, the majority opinion noted that the term "specific portion" as applicable to the corpus of a trust presents a "difficult matter" and a "quite different problem." 387 U.S. at 225. However, the dissenting opinion noted that "the way in which the Court defines 'specific portion' with regard to the survivor's income rights will inevitably affect the meaning of 'specific portion' with regard to the power of appointment." 387 U.S. at 227 n. 2. See Justice Black's dissent in *James v. United States*, 366 U.S. 213, 222. See also the discussion of this point in *Gelb*.

In *Northeastern Pa. Nat. B. & T. Co., supra* at 221, the Supreme Court said:

Congress' intent to afford a liberal "estate splitting" possibility to married couples, where the deductible half of the decedent's estate would ultimately—if not consumed—be taxable in the estate of the survivor, is unmistakable. * * * Plainly such a provision should not be construed so as to impose unwarranted restrictions upon the availability of the deduction. * * *

What respondent seeks to do here is to deny the decedent's estate of any benefit whatsoever of the estate-splitting provision because it does not specifically comply with his rigid definition of "specific portion." We will not assist him in this attempt in this case. See *Edward L. Stephenson Trust v. Commissioner*, 81 T.C. 283, 299 (1983), wherein we said:

It appears that the respondent, after losing in the courts and after failing to persuade Congress to adopt the consolidation approach, enshrined his litigating position as a regulation. We cannot now sanction a position which has already been so thoroughly repudiated.

We conclude that the "wife's share" of the trust qualifies for the marital deduction.

Our conclusion above makes it unnecessary for us to decide petitioner's alternative argument—that if the "wife's share"

as first described did not qualify for the marital deduction because the wife did not have the power to appoint a "specific portion" of the corpus of the trust, the "savings clause" would qualify it—and we decline to do so.[11]

Because of concessions on other adjustments,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

----

CHABOT, *J.*, concurring: The Supreme Court has interpreted the term "specific portion", as it is used the first time it appears in the first sentence of section 2056(b)(5). *Northeastern Pa. Nat. B. & T. Co. v. United States*, 387 U.S. 213 (1967). The majority hold that we must give the same content to that term when it is used the second time it appears in that same sentence.

Notwithstanding my concern that this interpretation may be bad tax policy (see the dissenting opinion of Simpson, J., *infra*), I agree that we are obligated to give the same content to each appearance of a term when the term appears twice in a single sentence, unless the statute itself (or perhaps unambiguous legislative history) gives clear instructions that the term is to have different meanings. But see *State of Washington v. Commissioner*, 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982). If we do fail to do so, or do so only from time to time and without even attempting to explain why we do so on one occasion but not another, we sow the seeds of confusion for legislative drafters, for taxpayers and their advisers, and for the administrators of our tax laws.

----

[11]We are not sure that the savings clause gave the wife the right to appoint any greater portion of the corpus than did the initial clause. However, we also doubt that utilization of the savings clause in this case would be prevented by *Commissioner v. Procter*, 142 F.2d 824 (4th Cir.), cert. denied 323 U.S. 756 (1944), as argued by respondent. In *Procter*, application of the savings clause would nullify the whole transaction and the court would have nothing to decide. Application of the savings clause in this case would not nullify anything; it would, at best, support the same marital deduction by extending the wife's power of appointment over the entire principal of the trust. See *King v. United States*, 545 F.2d 700 (10th Cir. 1976); *Estate of Dickinson v. Commissioner*, 63 T.C. 771 (1975).

I view the majority opinion as evidence of a renewed determination to adhere to the instruction issued by the Supreme Court in *Commissioner v. Lester*, 366 U.S. 299, 304 (1961), as follows:

And, as we have frequently stated, the Code must be given "as great an internal symmetry and consistency as its words permit." *United States v. Olympic Radio & Television*, 349 U.S. 232, 236 (1955).

NIMS and HAMBLEN, *JJ.*, agree with this concurring opinion.

---

NIMS, *J.*, concurring: I join the majority for the reason that, in my judgment, the result in this case must be logically consistent with that in *Northeastern Pa. Nat. B. & T. Co. v. United States*, 387 U.S. 213 (1967). For notwithstanding the Supreme Court's caveat that "nothing we hold in this opinion has reference to that quite different problem [i.e., the application of the specific portion requirement to corpus]," Justice Stewart in his dissenting opinion convincingly observes that "the way in which the Court defines 'specific portion' * * * will inevitably affect the meaning of 'specific portion' with regard to the power of appointment." Thus, while we are not perhaps technically bound to follow *Northeastern*, logical and practical consistency requires that we do so. I would therefore hold that the "wife's share" of the trust qualifies for the marital deduction solely on this basis.

STERRETT, COHEN, and CLAPP, *JJ.*, agree with this concurring opinion.

---

SIMPSON, *J.*, dissenting: In my judgment, there are sound and persuasive reasons for sustaining the definition of "specific portion" in section 20.2056(b)–5(c), Estate Tax Regs., at least as applied to the power of appointment over the corpus of a trust, and consequently, I must dissent from the holding of the majority.

It is well settled that the proper judicial attitude in reviewing regulations is one of deference. Congress has delegated to the Commissioner the authority to promulgate "all needful rules and regulations for the enforcement" of the revenue

laws. Sec. 7805(a). "The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307 (1967). If the challenged regulation harmonizes with the plain language of the statute, its origin, and purpose, the regulation must stand. See generally *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156 (1981); *National Muffler Dealers Assn., Inc. v. United States*, 440 U.S. 472 (1979); *Bingler v. Johnson*, 394 U.S. 741 (1969); *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496 (1948).

The estate tax marital deduction was enacted in 1948 to equalize the incidence of the estate tax in common law and community property jurisdictions. Sec. 361, Revenue Act of 1948, ch. 168, 62 Stat. 117; S. Rept. 1013, 80th Cong., 2d Sess. (1948), 1948–1 C.B. 285, 303–306. Congress permitted an interest in trust to qualify for the marital deduction if the surviving spouse was entitled for life to all the income from the trust corpus with a power in the surviving spouse to appoint the entire trust corpus. Sec. 361, Revenue Act of 1948, *supra*, 62 Stat. at 118. Congress allowed an interest that was less than a fee to qualify for the marital deduction in "recognition of one of the customary modes of transfer of property in common-law States" (S. Rept. 1013, *supra*, 1948–1 C.B. at 305) and because the surviving spouse "by reason of her right to the income and a power of appointment, is the virtual owner of the property" (S. Rept. 1013, *supra*, 1948–1 C.B. at 342).

The issue in the present case could not have arisen under the 1948 statute because such law required that the surviving spouse receive "all the income from the corpus" and a power of appointment over the "entire corpus." Thus, the value of the entire trust corpus on the date of the death of the surviving spouse was includable in her gross estate by virtue of the power of appointment. Under the 1948 amendment, a single trust could not be used if only a part of the corpus was to be set aside for the benefit of the surviving spouse and part was to be used for the benefit of other beneficiaries; a separate trust had to be created to qualify for the marital deduction. In 1954, the law was changed to allow a decedent to use a single trust and to claim a marital deduction for the portion given to the

surviving spouse.[1]

The 1954 amendment provided that a bequest of the right to all the income from a specific portion of the corpus and a power to appoint such specific portion of the corpus would qualify such specific portion for the marital deduction. An illustrative example in the Ways and Means Committee report provided:

if the decedent in his will provided for the creation of a trust under the terms of which the income from one-half of the trust property is payable to this surviving spouse with uncontrolled power in the spouse to appoint such one-half of the trust property by will, such interest will qualify as an exception from the terminable interest rule. * * * [2] [H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. A319 (1954).]

The 1954 amendment was purely technical; it was not designed to alter the balance struck in 1948 between common law and community property jurisdictions, and it should not now be construed to do so. See generally Note, "Qualification of a Specific Portion of a Trust for the Marital Deduction," 19 Stan. L. Rev. 468 (1967).

Section 20.2056(b)–5(c), Estate Tax Regs., was adopted on June 23, 1958, and requires that, in order to qualify for the marital deduction, the "specific portion" of the trust corpus that is subject to the surviving spouse's life estate and power of appointment must be expressed as a "fractional or percentile share" of the total corpus, "so that such interest or share in the surviving spouse reflects its proportionate share of the increment or decline in the whole of the property interest to which the income rights and the power relate." The regulation assures that if there is appreciation in the value of the corpus of a trust after the death of the decedent, the appreciation in value will not escape the estate tax. Justice Stewart pointed out the consequences of not applying such a rule:

Assume a trust estate of $200,000, with the widow receiving the right to the income from $100,000 of its corpus and a power of appointment over that $100,000, and the children of the testator receiving income from the balance of the corpus during the widow's life, their remainders to vest when she dies. Now suppose that when the widow dies the trust corpus has doubled in value

[1]See Fleming, "Present Status of the Marital Deduction," 33 Taxes 167, 168 (1955).

[2]The Supreme Court has stated that such example illustrated, but did not limit, the meaning of the term "specific portion." *Northeastern Pa. Nat. B. & T. Co. v. United States*, 387 U.S. 213, 221 n. 11 (1967).

to $400,000. The wife's power of appointment over $100,000 applies only to make $100,000 taxable to her estate. The remaining $300,000 passes tax free to the children. Contrast the situation in a community property State. The wife's 50% interest in the community property places $200,000 of the expanded assets in her estate and taxable as such; only $200,000, therefore, passes directly to the children. * * * [*Northeastern Pa. Nat. B. & T. Co. v. United States*, 387 U.S. 213, 227 (1967) (Stewart, J., dissenting); fn. ref. omitted.]

Such a result would allow the residents of common law States to create a trust giving a specific amount to a surviving spouse thereby avoiding the estate tax on the appreciation in value of the trust corpus. An interpretation of the statute which confers such a substantial tax benefit on the residents of common law States is clearly inconsistent with the 1948 and 1954 amendments. In summary, the regulation represents a contemporaneous construction of the statute by those personally and directly familiar with the legislative purpose; it constitutes an attempt to maintain the equality of treatment between residents of common law and community property States; and it is certainly harmonious with the words of the statute and the legislative history. Consequently, I believe that the regulation, as it pertains to the power of appointment over corpus, should be sustained.

In *Northeastern Pa. Nat. B. & T. Co. v. United States, supra,* the Supreme Court held that a bequest to a specific dollar amount per month from a trust was a bequest of all the income from a specific portion of trust corpus. The Court determined that section 20.2056(b)–5(c), Estate Tax Regs., "improperly restricts the scope of the congressionally granted deduction." 387 U.S. at 218. A majority of this Court apparently concludes that the Supreme Court's decision precludes us from sustaining the challenged regulation as applied to a power of appointment over corpus. With this conclusion, I am unable to agree.

It is said that "logical and practical consistency" (Nims, J., concurring) requires that "specific portion" be given one interpretation for both income and corpus. In the *Northeastern* opinion, the Supreme Court stated that "nothing we hold in this opinion has reference to" the "quite different problem" of whether a power of appointment of a specific dollar amount of corpus satisfies the specific portion requirement. 387 U.S. at 225. In the *Northeastern* case, the Court considered a bequest

of the *income* from a specific amount of corpus, and its decision did not result in any of the appreciation of the value of the corpus escaping the estate tax since the power extended to the entire corpus. The Court was aware that in considering a limited power over corpus, different questions would arise, and the Court, explicitly and directly, told us that it was not deciding the corpus question and in effect directed us to consider that question separately on its merits.

It is not necessarily true that "specific portion" must have the same meaning wherever used: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425 (1918) (Holmes, J.). In their work on estate and gift taxation, Stephens, Maxfield, and Lind observed that the reasons for construing "specific portion" in the manner of the regulations, when applied to a power over corpus, are so persuasive that "the courts may adopt divergent views." R. Stephens, G. Maxfield & S. Lind, Federal Estate and Gift Taxation 5–100 (5th ed. 1983); see also H. Dubroff & D. Kahn, Federal Taxation of Estates, Gifts, and Trusts 242–243 (3d ed. 1980). We have not hesitated to ascribe different meanings to the same word used twice in one sentence of a section when necessary to effectuate the congressional intent. See *State of Washington v. Commissioner*, 77 T.C. 656 (1981), affd. 692 F.2d 128 (D.C. Cir. 1982). We must construe "specific portion" in the light of the objectives of the statute, and those objectives make it abundantly clear that we cannot adopt a single or consistent meaning of the term. Permitting a bequest of the income from a specific amount of corpus to qualify for the marital deduction does no violence to the congressional scheme of equality, but applying a similar rule to the corpus of a trust will frustrate the clear and important objective of equality of treatment of residents of community property and common law States. To carry out that objective, we must construe "specific portion," when applied to a power over corpus, to be limited in the manner prescribed by the regulations.

Our decisions are too important to rest upon speculation over the implications of the reservation of an issue by the Supreme Court; a decision should be based on "harder stuff."

Compare *Crane v. Commissioner* , 331 U.S. 1, 14 n. 37 (1947), with *Tufts v. Commissioner,* 70 T.C. 756 (1978), revd. 651 F.2d 1058 (5th Cir. 1981), revd. 461 U.S. ____ (1983). Let us take the Supreme Court for what it actually said—no more and no less; and then let us carry out our assigned responsibility and make a decision by exercising *our best judgment.*

DAWSON and PARKER, *JJ.,* agree with this dissent.